Argued February 8, affirmed February 16, 1915.

# WHITNEY v. BISSELL.*

## (146 Pac. 141.)

**Brokers—Fraud—Ratification—Acceptance of Benefits.**

1. Defendant, having seen a broker's advertisement, wrote him regarding real estate in a certain vicinity, and in reply the broker wrote recommending plaintiff's property. During the ensuing negotiations, which resulted in a contract of sale, defendant inquired as to the crop returns for that year and was informed by the broker that they were about $3,000. Plaintiff denied giving this information to the broker and claimed that the broker was defendant's agent. *Held*, that the representation was made in behalf of plaintiff as an inducement to defendant to make the deal, and, defendant having in reliance thereon consummated the transaction, plaintiff could not accept the benefit of the contract negotiated by the broker and repudiate the transaction, but, having ratified the contract, was responsible for the misrepresentation.

  [As to effect of retention by principal of benefit of loan procured by agent without authority, see note in Ann. Cas. 1913E, 1115.]

**Brokers—Acting for Parties Adversely Interested.**

2. Where a vendor agreed to pay a broker a commission with knowledge that the broker was already employed by the purchaser and without the purchaser's assent, the agreement was in fraud of the rights of the purchaser.

  [As to when the same agent may represent adverse parties, see note in 46 Am. Rep. 37.]

**Vendor and Purchaser—Rescission by Purchaser—Laches.**

3. Defendant, induced to buy a fruit orchard by false representations that the returns from the orchard for 1910 were $3,000 or more, took and retained possession, cultivated the orchard, and set out new trees. He received little returns the first two years and about $1,200 the third year after deducting expenses. He listed the property for sale for about one year at a price that would have given him a profit and procured from the vendor an extension of time for the payment of the purchase money notes without making any complaint concerning the representation until the third year, when he offered to rescind. He claimed that he first learned of the falsity of the representation at that time. *Held*, that as the purpose of obtaining the information as to the returns was obviously to base thereon an estimate of the value of the property and the income that might be expected, and as the crop for 1910 was no better criterion than that of the following years, and general information regarding the value of orchards and the income therefrom was available to defendant by the use of due diligence, he was put upon inquiry during the first

---

*On the question of the waiver of the purchaser's right to rescind, see note in 30 L. R. A. (N. S.) 872.                    REPORTER.

season, and by his delay in rescinding affirmed the contract and waived his right to rescind.

**Contracts—Election of Remedies—Fraud—Rescission—Laches.**

4. A party induced by fraud to make a contract, upon discovery of the fraud, may either affirm the contract and sue for damages, or disaffirm and be reinstated in the position in which he was before the contract was consummated; but the adoption of one remedy excludes the other, and, if he desires to rescind, he must act promptly and return, or offer to return, what he has received.

**Contracts—Rescission by Purchaser—Laches.**

5. The rule that fraud inducing the execution of a contract is not acquiesced in until a party has knowledge thereof is subject to the principle that notice of acts and circumstances which would put a man of ordinary prudence and intelligence upon inquiry is equivalent in law to knowledge of all the facts a reasonable, diligent inquiry would disclose.

[As to carelessness as a bar to relief from fraud, see note in 32 Am. St. Rep. 384.]

From Jackson: FRANK M. CALKINS, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is a suit to foreclose a mortgage on about 10 acres of orchard land near Medford, Jackson County, Oregon, given by J. H. Bissell and Edythe M. Bissell, his wife, to plaintiff, O. D. Whitney, to secure the payment of three promissory notes aggregating $7,500, a portion of which mortgage was assigned to plaintiff, C. H. H. Parker. The trial court rendered a decree in favor of plaintiffs, and defendants appeal.

By their answer the defendants admit the execution of the notes and mortgage. For an affirmative defense they allege in effect that in the month of December, 1910, plaintiff Whitney was the owner of the premises and sold the same to defendants for $14,500, $3,000 of which was paid in cash, $4,000 by the conveyance of certain property in Minneapolis, Minnesota, subject to a mortgage of $700, and the balance by three promissory notes; that defendants at the time were sojourning in Florida and never saw the property until

after the purchase, all the negotiations being conducted by correspondence through the mails and by telegraph with L. W. Zimmer and J. W. Dressler, agents of plaintiff Whitney; that the defendants refused to purchase the property until plaintiffs advised them of the value of the products of the premises for the year 1910; that, in order to induce the defendants to make the purchase, Whitney, through his agents, stated that the income from the property for that year was $3,000; but that the returns were not yet complete; that they should be $3,500 for 1911. It is alleged that the defendants relied on such information and purchased the property; that the representation was false and Whitney knew the same to be so; that the premises for 1910 returned no greater sum than $700, which is an average. The defendants aver that they only recently made the discovery of the fraud, and promptly notified plaintiff Whitney in writing that on account thereof they rescinded the contract, demanded the repayment of the $3,000, a reconveyance of the Minneapolis property, and the cancellation of defendants' notes. They offered to reconvey the premises to Whitney and account to him for the rents, issues and profits during their incumbency. The reply denies the false representation. The circumstances of the transaction were about as follows: L. W. Zimmer formerly resided in Minneapolis, Minnesota, and defendant Dr. Bissell was also from that city. Having heard of the former through mutual friends and having seen his advertisement, in November, 1910, Dr. Bissell wrote to him in regard to property near Medford. Zimmer inquired of J. W. Dressler, a real estate dealer who had the orchard in question listed for sale. Dressler mentioned the Whitney orchard, and Zimmer wrote and recommended the same to Dr.

Bissell, who answered asking numerous questions; among them, as to what the crop returns for 1910 had been. He afterward requested the same information by wire, suggesting changes in the proposition. Zimmer consulted with Dressler and Whitney, and on December 13th sent Dr. Bissell the following telegram:

"Dr. J. H. Bissell, Sarasota, Florida:

"Your proposition acceptable, provided you agree to pay your first two notes in case you sell the orchard in the meantime. Income should be about $3,000 this year. Returns not in. Next year thirty-five hundred or more. Porter J. Neff, city attorney, Jackson County Bank, and I at your service.

"L. W. ZIMMER."

Dr. Bissell accepted the proposition of sale on the basis set forth in the answer. During the negotiations Dressler and Zimmer, with the knowledge of Whitney, agreed to divide the commission of 5 per cent on the sale equally. On January 9, 1911, a preliminary contract of sale was executed containing the following stipulation:

"It is further convenanted and agreed between the parties that L. W. Zimmer, who has negotiated this contract for the parties hereto and has acted as agent for the second party, shall be paid by the first party a commission of 5 per cent upon the purchase of $14,-500 to be received by him in full payment for his services for both parties hereto."

This agreement was signed by Whitney and by J. H. Bissell by Zimmer, as his agent. Afterward the same was forwarded to Dr. Bissell and ratified and signed by him.                    AFFIRMED.

For appellants there was a brief over the names of *Mr. Gus Newberry* and *Mr. B. F. Piatt,* with an oral argument by *Mr. Newberry.*

For respondents there was a brief over the name of *Messrs. Neff & Mealy,* with an oral argument by *Mr. Porter J. Neff.*

MR. JUSTICE BEAN delivered the opinion of the court.

1, 2. It is admitted that the statement of the returns for the crop of 1910 was greatly in excess of the amount realized, which was about $700. Whitney asserts that he did not furnish Zimmer with the information, but that he stated that he had not then received the returns from the fruit association of Medford which marketed the crop, and could not state the amount; that Zimmer, the agent of Dr. Bissell, was the authority for the representation. Zimmer testified positively that he obtained the information from Whitney. Dressler at first by affidavit corroborated Zimmer, but upon further consideration and reflection testified in substance the same as Whitney. According to our view of the case, this statement in regard to the proceeds of the crop of 1910 was made in behalf of plaintiff Whitney as an inducement to Dr. Bissell to make the deal. The latter, relying upon the representation, consummated the purchase of the fruit orchard. Plaintiff, having accepted the benefit of the contract negotiated by his agents, is not in a position to repudiate that part of the transaction by means of which the agreement was obtained. He cannot ratify the contract in part and repudiate it in part. When a principal elects to ratify any portion of an unauthorized act of an agent, he must ratify the whole of it. He cannot avail himself of such acts so far as beneficial to him and repudiate the remainder: *La Grande National Bank* v. *Blum,* 27 Or. 218 (41 Pac. 659); *McLeod* v. *Despain,* 49 Or. 536, 552 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19 L. R. A. (N. S.) 276);

*Grover* v. *Hawthorne,* 62 Or. 77, 96 (114 Pac. 472, 121 Pac. 808). It is stated in 31 Cyc. 1603, as follows:

"A contract induced by the fraud or misrepresentation of an agent while acting within the real or apparent scope of his authority cannot be enforced by the principal against the party misled even though the principal did not authorize the agent to act fraudulently or to misrepresent."

When Whitney agreed to pay Zimmer a commission, if he had knowledge that Zimmer was already employed by Dr Bissell, and if the latter did not assent thereto, Whitney and Zimmer were both guilty of a wrong committed against the first employer, as such employment would be a temptation to the agent not to give his best efforts to Dr Bissell. A contract entered into through such means is in fraud of the rights of the defendant Bissell: *Bell* v. *McConnell,* 37 Ohio St. 396 (41 Am. Rep. 528). Whitney was responsible for the misrepresentation made to Dr. Bissell by which he was induced to make the agreement, and the contract was voidable: *Kreshover* v. *Berger,* 135 App. Div. 27 (119 N. Y. Supp. 737).

3. Defendant J. H. Bissell testified that he came to Oregon the next season after the deal was made, cared for the orchard, and set out about 50 new trees, receiving but little returns from the orchard the first two years; that the first year he lost a part of the crop by frost, and the second the apples were not thinned enough; that in 1913, he received as returns from the orchard some over $1,200, after deducting the expenses for three years, not taking into consideration his own labor; that in May, 1913, he first learned that the representation made to him in regard to the crop of 1910 was false; and that he thereupon notified

plaintiff Whitney that he rescinded the contract, offered to reconvey the orchard, demanded a return of the money paid and the notes, and a reconveyance of the Minneapolis property. He states that he was injured on account of the small income from the investment, but that he does not know whether or not he paid too much for the fruit orchard; that the tract is about the same as others in the neighborhood, except that the kind of fruit is different and needs cross-pollenizing in order to bear abundantly. Plaintiff Whitney asserts that the place was cheap at $14,500. Dr. Bissell listed the property for sale for about one year at $17,-000, and afterward lowered the price to $13,500. He applied to Whitney and was granted an extension of time for the payment of interest on the notes.

4. It is contended by counsel for plaintiffs that, by the delay in attempting to rescind and by his treating the contract as effectual and occupying the property for about 2½ years, defendant Bissell forfeited his right to rescind the contract. As held in *Scott* v. *Walton,* 32 Or. 460 (52 Pac. 180), a party induced by fraud to make a contract has, upon the discovery of the fraud, an election of remedies either to affirm the contract and sue for damages, or disaffirm it and be reinstated in the position in which he was before it was consummated. The adoption of one of these remedies, which are wholly inconsistent, is the exclusion of the other. If he desires to rescind, he must act promptly and return, or offer to return, what he has received under the contract. He cannot retain the fruits of the contract awaiting further developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, especially in remaining in possession of the property received by him under the contract and dealing with it as his own,

will be evidence of his intention to abide by the contract: See, also, *Vaughn* v. *Smith,* 34 Or. 54 (55 Pac. 99); *Sievers* v. *Brown,* 36 Or. 218 (56 Pac. 170); *Elgin* v. *Snyder,* 60 Or. 297, 302 (118 Pac. 280).

The purpose of obtaining the information as to the returns of the orchard for 1910 was obviously to base thereon an estimate of the value of the real property and the income that might be expected therefrom. When Dr. Bissell arrived upon the ground in the spring of 1911, this was not his only source of information. It is well known that the products and the net returns from the fruit industry vary with the seasons and prices. It is not suggested why the crop of 1910 would be any better criterion by which to estimate the income than that of 1911 or 1912. General information in the usual way in regard to the value of orchards and the income therefrom was available to the defendant Bissell, and by the use of due diligence he could have discovered the fraud during the season of 1911. It seems somewhat strange that for about 2½ years Bissell should have relied upon the statistics for 1910, without apparently making any effort to inform himself in regard to the value of the property or the income therefrom, until about the time of suit upon his notes.

5. The rule as to the knowledge of the fraud before there would be an acquiescence therein is subject to the principle that notice of acts and circumstances which would put a man of ordinary prudence and intelligence upon inquiry is equivalent in the eyes of the law to knowledge of all the facts a reasonably diligent inquiry would disclose: 6 Cyc. 305; Clark on Contracts, p. 236. During the season of 1911, Dr. Bissell had sufficient information to put him, as a man of

ordinary prudence and intelligence, upon inquiry. If he had made investigation, he could have secured all the essential details regarding the income from this orchard, or could have obtained the amount of returns for 1910 from the fruit association in Medford which handled the product and kept the accounts. Indeed, his evidence does not disclose that he is yet thoroughly convinced that with the administration of his skill as a horticulturist he will not be able to produce an abundant crop and realize a profitable return on his investment provided he is allowed sufficient time. He appears to think the money is in the land, and the only complaint he makes is in getting it out or in regard to the income. Under the circumstances of this case, it does not appear that defendant Bissell indicated a desire to rescind the contract within a reasonable time after he could have discovered the alleged fraud by the use of due diligence, which amounts to the same thing as a discovery. He failed to act promptly in the matter, retained the possession of the land, cultivated the same for a long time, set out fruit trees, speculated upon a rise in the market both as to crops and real estate, and asked and obtained an extension of time for the payment of a portion of the interest, a part of which he paid on his notes, without making any complaint after he knew or should have known the condition of affairs. We think he should be deemed to have affirmed the contract and waived his right to rescind: See *Strong* v. *Strong,* 102 N. Y. 69 (5 N. E. 799) ; *Kingman* v. *Stoddard,* 85 Fed. 740 (29 C. C. A. 413) ; *Van Gilder* v. *Bullen,* 159 N. C. 291 (74 S. E. 1059) ; *Simon* v. *Goodyear Metallic Rubber Shoe Co.,* 105 Fed. 573 (44 C. C. A. 612, 52 L. R. A. 745).

The decree of the lower court is therefore affirmed.

AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT
and MR. JUSTICE HARRIS concur.