Argued December 20, 1933; affirmed January 23, 1934

## WILSON ET UX. *v.* EMPIRE HOLDING CORPORATION ET AL.

(28 P. (2d) 843)

*F. M. Phelps,* of Portland (Phelps & Burdick, of Portland, on the brief), for appellant.

*W. E. Crews,* of Medford (Crews & Codding, of Medford, on the brief), for respondents.

CAMPBELL, J. This is a suit by E. M. Wilson and Addie K. Wilson, his wife, against the Empire Holding Company, a corporation, and the directors thereof, to rescind, on the grounds of fraud, a contract for the purchase of capital stock of said corporation and to cancel two notes and a mortgage given as security for the payment of the purchase price thereof.

On June 29, 1931, plaintiffs purchased from defendant corporation fifty shares of the capital stock of said corporation and in payment therefor issued a promissory note in the sum of $2,000, a mortgage upon certain real property in Jackson county, Oregon, and a further promissory note in the sum of $3,000.

Plaintiffs alleged that they were induced to purchase the said stock by reason of the fraudulent representations of defendants' agents in that said agents represented to plaintiffs: (1) That the principal officers and directors of said corporation, and each of them, had actually paid into the treasury of the company the sum of $20,000 in money for their stock in said company; (2) that none of the principal officers and directors of said company were being paid any salaries whatever and would not be paid any salaries until and unless certain subsidiary companies, which were thereafter to be organized and incorporated, were actually in operation; (3) that all the money received by said corporation and all securities from the purchase of stock and all other evidences of indebtedness would be deposited with the Insurance Commissioner of the State of Oregon as a basis or foundation for the organization of said subsidiary companies; that said corporation through its agents and salesmen, expressly stated that at least one of said subsidiary companies would be in operation by July 1, 1931, and the other corporations contemplated would

be in operation January 1, 1932, and all the moneys and securities received, with the exception of 15 per cent of the actual cash paid on stock subscriptions should be immediately deposited with the State Insurance Commissioner at Salem and the whole amount thereof should remain intact as a basis or foundation for the subsidiary corporations to be organized as aforesaid.

The plaintiffs further alleged that they believed these representations were true and that they relied upon them; that the representations were made for the purpose of defrauding the public in general and these plaintiffs in particular; that defendants knew said representations were false and intended that plaintiffs should believe and rely upon them; that said representations were false and fraudulent; that plaintiffs have received no consideration for the execution of said instruments and the capital stock, subscribed for by plaintiffs, has been and is now in possession of defendant corporation.

Plaintiffs prayed for a rescission of the contract, a surrender of the said promissory notes and mortgage and that the same be cancelled of record.

Defendant corporation, through their receiver, Robert G. Dieck, filed an answer, in effect a general denial, except that it admitted its corporate capacity, the identity of the several directors, the sale of the said stock to plaintiffs and the execution of the notes and mortgage by plaintiffs to defendant corporation. The directors defaulted.

For a further and separate answer and defense, it alleged, that prior to December 1, 1931, plaintiffs had full knowledge of all the matters, conditions and things surrounding the execution of the notes by plaintiffs to defendant corporation and also had full knowledge

of the management of the affairs of the company as stockholders and with such knowledge failed to act with due diligence and have elected to affirm said contract of purchase of said stock. This was denied in the reply.

The cause was tried to the court who found in favor of plaintiffs. From such decree, defendant corporation appeals.

The first assignment of error is that: ''The court erred in finding for the plaintiff and against the defendant, Empire Holding Company, when the undisputed testimony disclosed that the plaintiffs, after having knowledge of the purported fraud as alleged in the complaint failed to rescind the contract but treated it as their own and thereafter participated in the management of the corporation and affirmed the contract.''

There is no difference of opinion between learned counsel as to the law of the case. It requires no citation of authority to support the principle that a contract based on fraud and deceit may be rescinded by the innocent party. The party seeking to rescind must act promptly upon the discovery of the fraud. If he treats the property as his own he will be bound by the contract. 9 R. C. L. 932; *Whitney v. Bissell,* 75 Or. 28 (146 P. 141, L. R. A. 1915D, 257). What amounts to notice or knowledge of the fraud is usually a question of fact. The standard required is that of what would be done by a reasonably prudent, careful person. *Linebaugh v. Portland Mortgage Company,* 116 Or. 1 (239 P. 196); *Whitney v. Bissell,* supra; *Cameron v. Edgmont Investment Company,* 136 Or. 385 (299 P. 698).

Plaintiff introduced evidence tending to prove the allegations of the complaint. No evidence was intro-

duced by defendant tending to refute the allegations of fraud.

The fraud is practically admitted by defendant. Defendant's counsel, in his opening statement to the court, says:

"We have denied, of course, the allegations of fraud; we have alleged and complained and will contend that after the discovery of the fraud alleged in his complaint, that he permitted the contract to go ahead and proceeded to act in that capacity and that he did not rescind at that time but went ahead and himself took part in the management of the corporation, and that he cannot at this time come in having had full knowledge of all the fraud and having taken part in the management of the corporation and now demand a recission of it.

"That will be our defense, Your Honor.  *  *  *"

To establish this defense, certain correspondence to the stockholders by different members of the board of directors, was introduced in evidence. It appears that after defendant corporation began to do business the board of directors developed internal strife, and dissolved into factions. Each faction desired to control the corporation. In order to do so, each sought to receive the proxies of the different stockholders for the next stockholder's meeting. To induce the stockholders to give his proxy, each cast aspersions on the conduct of his opponent. The history of the trouble, as disclosed by the record, is about as follows: On November 17, 1931, the secretary of the board of directors sent out a form letter, together with a copy of a newspaper of general circulation published at Salem, Oregon, to all the stockholders of the company. In this letter, he solicited the proxies of the various stockholders of the corporation. In it attention was

called to the news article in which it appeared that, among other things, officers were being paid salaries and that the treasury of the company was almost empty. Further, that a move was being made by secretary to gain control of the corporation and that the permit to sell stock had been temporarily suspended upon the request of the officers of the corporation. It also appeared from the news article that stock, purchased by directors of the corporation, had been paid for partly in cash, partly in notes and partly by commissions from the sale of the stock by the directors to themselves. It further appeared, from the article, that: "There is no reason, Mott (the corporation commissioner of the state) said, why the affairs of the Empire corporation cannot be straightened out and the proposal to organize and operate profitable insurance companies accomplished successfully."

On November 20, 1931, plaintiffs received a form letter from the president of the company in which he stated that the trouble in management of the company was caused by the secretary who wished to secure control of the company. In this letter it was explained that the former corporation commissioner of the state who issued the permit to the defendant corporation to sell stock, agreed that promissory notes of the directors would be acceptable in lieu of actual cash for the payment of capital stock purchased by the directors. The letter also stated that salaries of the officers had not been drawn, but merely voted and would be put up to the new board of directors. An abbreviated financial statement, favorable to the stockholders, was enclosed. The letter closed with the further assurance that the money of the stockholders was safe, that a subsidiary company would soon be organized and operating and the further admonition that the whole

trouble was caused by the efforts of the secretary to gain control of the company.

On November 25, 1931, another form letter was sent out by the secretary in which he stated that the company was "essentially sound" and "the stockholders can be protected absolutely". The letter also contained a reiteration of some of the charges made and a denial of some of the counter-charges and claims contained in the president's letter.

Thereafter plaintiffs sent their proxy to the president who voted it at the stockholder's meeting held December 7, 1931.

On December 8, 1931, the next day after the stockholder's meeting, an audit of the company's books commenced. This audit was finished during the latter part of December, 1931.

On March 2, 1932, plaintiff, E. M. Wilson, through his attorneys, notified defendant corporation of his intention to rescind the contract for the subscription of stock and demanded the return of the above-mentioned notes and mortgage.

On April 2, 1932, plaintiffs wrote to the secretary of the corporation making demand for the rescission of the contract and the return of the above-mentioned instruments.

On July 26, 1932, plaintiff's attorney notified the receiver of the company that legal action would be instituted to secure a return of the notes and mortgage and a rescission of the contract.

On July 28, 1932, the receiver replied to the above letter refusing to return said notes and mortgage.

■ We are of the opinion that plaintiff's action, when he received the intimation of the fraud, was that of a reasonably prudent, careful person, the standard by which his conduct must be measured. The mere act

of giving his proxy, on the limited information he had, did not amount to an affirmance of the contract.

■ In defendant's second assignment of error it challenges in this court for the first time, so far as the record discloses, the sufficiency of the complaint. While the complaint probably does some violence to that section of the statute which requires the pleader to make, "A plain and concise statement of the facts constituting the cause of action without unnecessary repetition," (Oregon Code 1930, § 1-604), a careful perusal discloses that it contains all the necessary elements of a suit for rescission on the grounds of fraud. *Wheelwright v. Vanderbilt,* 69 Or. 326 (138 P. 857).

The learned circuit judge, we believe, committed no error in finding for the plaintiffs and the decree will be affirmed.

It is so ordered.