KOTZ v. RUSH.

4-9432                                                   238 S. W. 2d 634

Opinion delivered March 19, 1951.

Rehearing denied April 23, 1951.

*H. G. Leathers,* for appellant.

*Claude A. Fuller,* for appellee.

Minor W. Millwee, Justice. Appellants, E. W. Kotz and wife, owned and operated a business known as "White River Camp" located at one end of the bridge over White River on U. S. Highway 62 in Carroll County, Arkansas. The camp consists of a cafe, store building, garage apartment and several cabins and boats.

In February, 1949, appellee, Blanche M. Rush, who lived in Dallas, Texas, entered into negotiations with appellants to purchase the property. After two trips to Arkansas, a contract was entered into in March, 1949, whereby appellee agreed to purchase the property at a price of $26,750. Appellee exchanged a lot in Dallas, Texas, and paid $1,000 cash on the purchase price leaving a balance of $14,837.50; to secure the payment of which she executed a note and mortgage of the camp property to appellants payable $150 per month. After making six monthly payments appellee defaulted. Appellants instituted this suit to foreclose the mortgage on April 15, 1950.

Appellee filed an answer and cross-complaint alleging that appellants made certain false and fraudulent representations as to profits earned in the business in 1947 and 1948 and the number of reservations for "float" trips for the 1949 season. Appellee asked that the mortgage be cancelled and for recoupment of damages sustained by reason of said false representations to the extent of the balance of the purchase price alleged due.

The chancellor found for appellee on her cross-complaint and directed that $8,000 be deducted from the balance due on the mortgage because of false representations by appellants which induced the execution of the contract and mortgage. Appellants were awarded judgment for $5,965.43 after allowing the credit of $8,000 and foreclosure was ordered.

To sustain the allegations of her cross-complaint appellee introduced several witnesses who were present

during the negotiations between the parties. Appellee and others present testified that appellant E. W. Kotz told appellee that he realized a net income of $6,500 per year from the operation of the camp during the seasons of 1947 and 1948. When appellee asked him to produce some record evidence of such earnings, Kotz stated that he did not keep accurate records, that he did very little banking business and facetiously remarked that he just kept his books in his hip pocket.

Carl Rucker, a real estate agent of Dallas, Texas, testified that he represented both parties in the negotiations and accompanied appellee on both trips to Eureka Springs. Based on Kotz's representations, Rucker advised appellee that the income from the property seemed to justify the investment contemplated.

While appellee was experienced in other lines of business, she had not previously engaged in the operation of a resort. She testified that at the time of the negotiations Kotz also told her that he already had reservations for all cabins and boats for the first thirty days of the 1949 fishing season, and that only one reservation was turned over to her. She lost money in the operation of the business in 1949.

Gerden Whitner testified that he worked for both the appellants and appellee in their respective operations of the camp; that both parties did about the same volume of business and that he had heard Kotz say that he was not making any money out of the business.

Walter Hamblin owned the business from 1929 to 1946. He stated that he operated the camp most of the time, and others operated it for him at times, during his period of ownership. He described the business as "a white elephant" and stated that although he tried hard, he had never been able to operate the business at a profit. He sold the business for $4,000 in 1946. Several real estate dealers estimated the market value of the camp at $9,000 to $12,000.

Appellant E. W. Kotz admitted that he represented to appellee that he made approximately $6,500 out of the

business in 1947, but stated that he told her he did not make that much in 1948. Although he filed an income tax return for 1947, he could not remember whether he reported an income of $6,500 from the business that year, nor could he remember how many reservations he turned over to appellee for the 1949 season. There was some evidence by appellants to the effect that appellee did not operate the camp efficiently.

The authorities generally seem to recognize the rule that false representations by the seller as to present or past income of the property sold or conveyed will, if relied upon by the purchaser, constitute actionable fraud. The following statement is found in 23 Am. Jur., Fraud and Deceit, § 68: "A false representation by an owner of land, or his agent, seeking to dispose of the property commercially, as to the present or past income, profits, or produce thereof or as to the amount of rent received therefor is regarded as a statement of fact upon which fraud may be predicated if it is false, since these are matters within the representor's own knowledge. The same is true of an assertion that the profits of a business are or have been a certain sum annually, or a false statement as to what a business now earns." See, also, Williston on Contracts, § 1492, 55 Am. Jur., Vendor and Purchaser, § 84; *Hecht* v. *Metzler,* 14 Utah 408, 48 Pac. 37; *Whitney* v. *Bissell,* 75 Or. 28, 146 Pac. 141, L. R. A. 1915D, 257; *Cross* v. *Bouck,* 175 Cal. 253, 165 Pac. 702; *Hogan* v. *McCombs Bros.,* 190 Ia. 650, 180 N. W. 770; *Vouros* v. *Pierce,* 226 Mass. 175, 115 N. E. 297.

The remedies of a purchaser in cases of this kind are set forth in *Danielson, et al.* v. *Skidmore, et al.,* 125 Ark. 572, 189 S. W. 57, as follows: "He may rescind the contract and by returning or offering to return the property purchased within a reasonable time entitle himself to recover whatever he had paid upon the contract. Again he may elect to retain the property and sue for the damages he has sustained by reason of the false and fraudulent representations, and in this event the measure of his damages would be the difference between the real value of the property in its true condition and the price

at which he purchased it. Lastly to avoid circuity of action and a multiplicity of suits, he may plead such damages in an action for the purchase money and is entitled to have the same recouped from the price he agreed to pay. *Matlock* v. *Reppy*, 47 Ark. 148, 14 S. W. 546; *Ft. Smith Lumber Co.* v. *Baker*, 123 Ark. 275, 185 S. W. 277.''

Appellee chose the last remedy mentioned above and the only issue is whether the chancellor's findings are against the preponderance of the evidence. We think the greater weight of the evidence supports the conclusion that appellants wilfully misrepresented their past income from the property; that appellee made a diligent effort to ascertain the truth or falsity of such representations, which were within the peculiar knowledge of appellants; and that appellee relied on such false representations to her damage in the amount fixed by the court. The decree is, therefore, affirmed.