MILLER v. PORTER.

4-9470                                        238 S. W. 2d 940

Opinion delivered April 30, 1951.

842

*James R. Hale,* for appellant.

*E. J. Ball* and *Rex W. Perkins,* for appellee.

ED. F. McFADDIN, Justice. Appellant, Miller, instituted suit to rescind a contract of purchase he made with appellee, Porter. The rescission was sought on the claim that Porter made material and false representations which induced Miller to sign the contract. The Chancery Court refused the prayed relief; and Miller has appealed.

Porter owned a farm of 80 acres on which was his home and dairy herd (of 10 cows) that he handled as his business. In employing Newlin, a real estate broker, to sell the farm, cattle and other personal property, Porter represented that he received $400 a month from the business. Through Newlin, appellant Miller, a resident of New Mexico, became interested in Porter's proposition; and to Miller, Porter made the representation that his gross receipts from the dairy herd were $400 per month. Relying on such representations, Miller signed the contract of purchase, paying $3,250 cash, and agreeing to pay the balance of $12,250 in payments of $200 per month for the first year, and $150 per month thereafter. As soon as Miller discovered the falsity of Porter's representations—as to the gross monthly receipts from the dairy herd—he immediately attempted to rescind the contract.

When we consider the situation of the parties, and all the surrounding circumstances, the right of rescission becomes apparent. Miller detailed his financial status to Porter: he only had $3,750 in cash and no other income; he was willing to make a cash payment of $3,250 on the total contract price of $15,500 if the receipts from the dairy herd would allow Miller and wife a living, and also take care of the monthly payments to Porter. Thus the amount of monthly receipts from the dairy herd was

known by both parties to be a most important factor in the transaction.

Porter gives some rather unconvincing explanations about his $400 per month representation: first, he admits he named that figure to Newlin, but claims it referred to all receipts of the farm, including the sale of chickens, as well as the sale of cattle; and then, secondly, he builds up a theory that with $500 Miller could have made the down payment for the purchase of four additional cows which, with Porter's herd, would have increased the gross receipts from milk to somewhere near the $400 per month figure. But scrutiny of all Porter's testimony discloses that the greatest amount he ever received from milk, in any one month, was $222.45; and that the average per month over his entire experience was about $200. Furthermore, in the twelve months preceding the representation the total amount he made from the sale of chickens was only $110, and the total amount he made from the sale of cattle was only $700. Porter finally admitted on cross-examination that his *total gross income* for the preceding year did not exceed $2,000 *from all sources*. It is thus apparent that Porter never had an income of $400 per month even from his combined sources, and that his representations, to such effect, were material and false.

Porter says, that Miller was on the farm for more than a week and helped milk the cows, and thus had an opportunity to see the amount of milk produced: and, thus, Porter argues that Miller knew the truth, independent of any representation. But here, again, Porter shrewdly explained away to Miller every suspicious circumstance: Miller knew only about the butterfat and milk weights from Jersey cattle; Porter's cattle were Holsteins; and Porter told Miller that one Holstein would produce twice as much as two Jerseys. Thus Porter made it appear plausible that a herd of only nine or ten Holstein cows could produce enough milk to gross $400 per month. Furthermore, when Miller saw one check for a semi-monthly payment to be only $113, Porter—ever ready with explanations—said that the check was small

because some of the milk had been lost due to spring onions, and that such situation would not occur again. In short, Porter smoothed out all suspicious matters, with the result that Miller relied on the representation that the gross monthly revenue was $400.

Porter knew that Miller could not support himself and wife and also make the required contract payments unless the farm revenue was $400 per month; and Porter represented that it was that amount. With that material fact misrepresented by Porter and relied on by Miller, the case at bar is ruled by our holdings in *Fausett & Co.* v. *Bullard,* 217 Ark. 176, 229 S. W. 2d 490, and *Kotz* v. *Rush, ante,* p. 692, 238 S. W. 2d 634 (opinion delivered March 19, 1951). In *Fausett* v. *Bullard (supra)* we said:

"There are many circumstances that justify the buyer in acting upon the seller's statements, even though there is an opportunity to discover their falsity . . ." citing *Brown* v. *Le May,* 101 Ark. 95, 141 S. W. 759, and *Myers* v. *Martin,* 168 Ark. 1028, 272 S. W. 856.

In *Kotz* v. *Rush (supra)* we said:

"The authorities generally seem to recognize the rule that false representations by the seller as to present or past income of the property sold or conveyed will, if relied upon by the purchaser, constitute actionable fraud. The following statement is found in 23 Am. Jur., Fraud and Deceit, § 68: 'A false representation by an owner of land, or his agent, seeking to dispose of the property commercially, as to the present or past income, profits, or produce thereof or as to the amount of rent received therefor is regarded as a statement of fact upon which fraud may be predicated if it is false, since these are matters within the representor's own knowledge. The same is true of an assertion that the profits of a business are or have been a certain sum annually, or a false statement as to what a business now earns.' See, also, Williston on Contracts, § 1492; 55 Am. Jur., Vendor and Purchaser, § 84; *Hecht* v. *Metzler,* 14 Utah 408, 48 Pac. 37; *Whitney* v. *Bissell,* 75 Or. 28, 146 Pac. 141, L. R. A. 1915 D, 257; *Cross* v. *Bouck,* 175 Cal. 253, 165 Pac. 702; *Hogan* v.

*McCombs Bros.,* 190 Ia. 650, 180 N. W. 770; *Vouros* v. *Pierce,* 226 Mass. 175, 115 N. E. 297.''

The decree of the Chancery Court is reversed and the cause is remanded, with instructions to grant the plaintiff the relief prayed in the complaint.