CROSS *v.* RIAL.

5-1323                                    305 S. W. 2d 129

Opinion delivered July 1, 1957.

[Rehearing denied Sept. 30, 1957]

*Wood* and *Smith,* for appellant.

*W. H. Howard* and *D. A. Clarke,* for appellee.

PAUL WARD, Associate Justice. The question presented on this appeal is whether or not appellant waived his right to rescind the purchase of a pickup truck from appellee. On November 26, 1955 appellant purchased a new 1956 pickup truck from W. W. Rial, appellee, who is the sole owner of the Rial Motor Company of Mc-Gehee, Arkansas. After a down payment of $977.48 (consisting of a trade in for $600 and $377.48 cash) the balance of the purchase price amounted to $2,747.52, payable as follows: $791.09 on May 25, 1956; $1,107.83 on November 25, 1956; and $875.64 on May 25, 1957. The Rial Motor Company (appellee) retained title to the said pickup truck in a Conditional Sales Contract executed by it and appellant on the date above mentioned.

Approximately one-third of the total purchase price mentioned above was for a four-wheel drive attachment manufactured and marketed under the trade name ''Napco Powr-Pak.'' According to the understanding of appellant and appellee the four-wheel drive equipment was installed by the Dealers Truckstell Company in Memphis, Tennessee, at which place appellant was to, and did, accept delivery of the pickup truck after the installation had been made.

A short time after appellant accepted delivery of the pickup truck he noticed that the four-wheel drive equipment was not operating satisfactorily. He made several attempts, by taking the truck to appellee's garage and to other garages, to correct the defects. Finally after having driven the truck 6,288 miles he voluntarily left it parked on appellee's premises some time near the end of April, 1956. When the first payment became due on May 25, 1956 under the terms of the Conditional Sales Contract, appellant refused to make payment and appellee brought this action in the circuit court to collect the balance of the purchase price. After hearing all of the testimony the trial judge, sitting as a jury, rendered judgment in favor of appellee and against appellant in the amount prayed for. For a reversal of said judgment appellant prosecutes this appeal.

Much space in the able briefs of both parties is devoted to the question of whether or not, under all of the facts and circumstances attending the purchase of the equipment by appellant, there existed an implied warranty on the part of appellee that the four-wheel drive equipment, when installed on the truck, would operate satisfactorily for the purpose for which it was purchased.

It may be admitted for the purpose of this opinion that the four-wheel drive installation was defective and that it did not do the job for which it was purchased. However it is not necessary, and it would serve no useful purpose, for us to resolve the question above posed, because we have reached the conclusion that the judgment of the trial court must be sustained on the ground, assigned by the trial judge, that appellant waived his right to rescind the sale.

The trial court, after setting out the facts as it found them to exist, made the following conclusion of law:

"Defendant waived any possible right to rescission by executing the contract to purchase the truck at a time when he had actual knowledge of the fact that it had an objectionable feature, by failing and refusing to permit

Dealers Truckstell Sales, Inc., to service the 4-wheel drive accessory, by driving the truck 6,288 miles, by permitting others to work on the truck, and by requesting Plaintiff to sell the truck for him and stating that he would pay the difference if there was any loss.''

The testimony, which is virtually undisputed, relating to appellant's waiver of the right to rescind is essentially and substantially as hereafter set out: Before appellant went to appellee's place of business to purchase a pickup truck equipped with four-wheel drive mechanism, he had already seen advertisements put out by the Napco Company describing Powr-Pak; At the time he closed the deal with appellee he understood that the four-wheel equipment would have to be installed by the Truckstell Company in Memphis, Tennessee, and; He was aware that the equipment was relatively new, that appellee did not install the equipment, and that appellee would not make a profit on the sale of the extra equipment. It is not disputed that the four-wheel drive mechanism did not function satisfactorily and efficiently, probably for the reason that it was not properly installed. As appellant was driving the truck (with the equipment installed) from Memphis he noticed what he considered to be too much vibration yet he went to appellee's place of business one or two days later and signed the sale agreement without making any objections. The record shows that appellant on different occasions had repairs made on the truck by the Rial Motor Company and others but it is not shown definitely on what dates the repairs were made or exactly what objections were made to appellee, if any. It was shown that on or about the middle of February 1956 the Rial Motor Company installed two universal joints in the truck and that appellant paid for them. Again it is not shown what objections were made to appellee on this occasion. It is not denied that the truck (with the four-wheel drive equipment) was not functioning properly and that this fact was made known to appellee. The record further discloses that appellee advised appellant to take the truck to Memphis in order that the Truckstell Company might try to correct the defects, but for some reason ap-

pellant failed or refused to do so. Appellee offered to take the truck to the Truckstell Company at Memphis, at his own expense, to have the defects remedied, but appellant would not consent, giving as his reason (according to Mr. Rial) that "he didn't believe they could fix it."

The record does not disclose that appellant at any time, even at the time of the return of the truck to appellee, after having used it 4 months, made the specific contention to appellee that there had been a breach of warranty or that he desired specifically to rescind the sale. For instance appellant, at one time, testified: "I told them it was vibrating, it wasn't right, it was hard to steer, the whole thing, but I never did bring it in and set it down and say, 'here it is, it has got to be fixed.'" On another occasion appellant stated: ". . . the first complaint that I ever talked to them about was the clutch slipping when I got it . . ."

In regard to the offer to take the truck to Memphis for repairs, Mr. Rial testified: Q. "Did he refuse to let you take it up there?" A. "He (appellant said he just wanted to trade the truck and get something he wanted better than, he would like better than the truck." Moreover appellant offered to reimburse appellee for any loss incident to another trade.

Ark. Stats. § 69-1469 offers a choice of remedies for the buyer to pursue where there is a breach of warranty by the seller. The facts disclosed heretofore place this case under the provisions of sub-section (3) of the above statute. This sub-section provides that: "Where the goods have been delivered to the buyer he cannot rescind the sale . . . if he fails to notify the seller within a reasonable time of the election to rescind . . ."

As was held in *Logue* v. *Hill*, 218 Ark. 797, 238 S. W. 2d 753, the determination of whether the buyer has made an election to rescind within a reasonable time depends on testimony. In other words it presents a question of fact for a jury.

In the case under consideration the determination of the fact question against appellant by the trial judge, sitting as a jury, must be sustained if it is supported by substantial evidence.

It is our conclusion that there is substantial evidence in this case to support the findings of the trial court and its judgment is therefore affirmed.

Affirmed.

Justice ROBINSON dissents.

SAM ROBINSON, Associate Justice (dissenting). It is the opinion of the majority that there is substantial evidence to the effect that Cross did not elect to rescind within a reasonable time, and, therefore, cannot prevail. In support of this finding, the majority cites *Logue* v. *Hill*, 218 Ark. 797, 238 S. W. 2d 753; but there is a vast difference between the facts in the *Logue* case and the case at bar. Logue bought a second-hand tractor in the early spring and used it in planting, cultivating, and gathering his crop, and made no attempt to rescind the purchase contract until after the crop season was over. But, even then, he was allowed to recover for a breach of contract, and he had filed only a general denial to the complaint.

Cross is a farmer, living at Pendleton, near Dumas, Arkansas. In his farming operation he needs a four-wheel drive truck. He had owned several four-wheel drive Jeeps, all of which had proven satisfactory. There is not a scintilla of evidence to the effect that he ever had any trouble with the four-wheel drive mechanism of his Jeeps; his experience with four-wheel drive automotive equipment had been good. He learned that a GMC truck, equipped with four-wheel drive, could be obtained and went to see appellee, W. W. Rial, the local GMC dealer, who was also the dealer in the four-wheel drive equipment. Rial contracted to sell Cross a GMC Pickup Truck equipped with four-wheel drive mechanism. Mr. Rial did not have the four-wheel drive equipment in stock to put on the truck, but arranged to have the truck so equipped in Memphis. He therefore obtained a 1/2 Ton

Pickup Truck in Memphis and had it delivered to a concern known as Dealers Truckstell, where the four-wheel drive mechanism was installed on the truck. This four-wheel drive equipment is known as Powr-Pak.

There is no question but that Rial was the dealer who sold the four-wheel drive equipment to Cross as a part of the 1/2 Ton Pickup. The undisputed evidence is that the only way Cross could obtain the truck equipped with the four-wheel drive was through a dealer; he could not buy the four-wheel drive equipment from Dealers Truckstell, or from the manufacturers of the unit. Rial had literature in connection with the four-wheel drive mechanism. Among other things, this literature states:

"Now, you can go anywhere you want . . . in your GMC Truck equipped with Powr-Pak 4-Wheel Drive.

"You can climb 70% grades . . . plow through axle-deep snow or mud . . . haul heavy payloads over routes where you'd never dreamed a truck could go.

"With its powerful 'Powr-Pak' 4-Wheel Drive, the GMC is equally at home on or off-the-highway.

"Installation of the Napco Powr-Pak requires no frame cutting . . . nothing to weaken or distort the chassis. And at trade-in time it's a simple matter to remove the Powr-Pak and re-install it on your next GMC Truck.

"See following pages for further reasons why it will pay you to own a new GMC with Powr-Pak 4-Wheel Drive!

"Easiest-steering 4-Wheel Drive on the market because it has constant-velocity joints and proven low-friction advanced design. There's no highway whip or weave, even at high speeds. Turning radius is same as for standard 2-Wheel Drive models.

"Two-speed Napco transfer case gives 8 speeds forward, 2 in reverse. Allows you to shift in or out of 4-Wheel Drive at any Speed. Mounted on rubber for quiet

operation. Ground clearance with full load is 14 1/4″ at lowest point.

"6 Easy handling. Handles like a passenger car at all speeds. Short turning radius.

"7 Replacement parts and service available through every one of over 3,000 GMC Dealers in the U. S.

"8 Quiet operation. Transfer case mounted in rubber.

"9 Increased truck life. Because POWR-PAK utilizes engine torque more efficiently engines can 'loaf' at low rpm while pulling heavy payloads. No gunning, no racing, no clutch 'jumping' or chattering.

"10 PTO optional. PTO conveniently located on top of transfer case takes full engine RPM and torque. Ideal for driving winches, power saws, core and post hole digging, etc. Available at small extra cost.

"11 GUARANTEED . .. . The Powr-Pak's outstanding durability makes it possible to offer the industry's *most liberal guarantee."*

Rial had the truck equipped with four-wheel drive mechanism and sold the whole thing to Cross as a unit. Later, Rial refused to remove the four-wheel mechanism because it, along with the truck, had been sold by him as one unit. There was executed and delivered to Cross what is called an "Owner's Service Policy" which, among other things, provides that the dealer will "road-test vehicle for engine, clutch, transmission, axle, brake and steering operations and make necessary corrections." One of the faults with the truck sold to Cross was that it was very difficult to steer. The undisputed evidence is that it was almost impossible to handle the truck on any kind of rough road. In an effort to overcome this condition, Cross attempted to obtain power steering, but it was not available. Another serious defect was in the four-wheel drive transmission; in fact, the whole trouble appeared to be in this part, which caused the vibration, making the truck practically useless. The policy is for three months, or 4,000 miles. The truck was re-

turned to the dealer at the end of the three month period. According to the undisputed evidence the truck, as sold to Cross, was practically worthless. He was never able to use it with any satisfaction whatsoever, and this condition existed from the day he bought it until the day he returned it three months later. He purchased it on the 26th day of November and returned it on the 27th day of February. This is the positive testimony. One witness for Rial testified that he thought the truck was returned in April, but was not positive at all in his testimony on this point. During the time that Cross had the truck he did everything possible to cause it to operate in a satisfactory manner. It was only when he gave up in utter despair that he returned the vehicle to Rial, from whom he purchased it. In these circumstances, I do not believe it can be said that the evidence is substantial that Cross waited an unreasonable time in which to elect to rescind. He was not looking for excuses to avoid his contract, although he had been charged a total of $3,752.04 for a 1/2 Ton Pickup Truck. On the contrary, he was doing everything possible to have the truck put in condition where it could be used. As it now stands, he will have to pay a total of almost $4,000 for a 1/2 Ton Pickup Truck that is practically worthless and has never been suitable for any use whatsoever. It is my view that he has ample grounds for rescinding the contract, and there is no substantial evidence that he did not elect to rescind in a reasonable time. Therefore, I respectfully dissent.