LEE PARKER *v.* FRED JOHNSTON

5-4454                                    426 S. W. 2d 155

Opinion delivered March 18, 1968
[Rehearing denied April 29, 1968.]

*McMillen, Teague, Bramhall & Davis,* for appellant.

*Reed & Blackburn,* for appellee.

GEORGE ROSE SMITH, Justice. In October, 1965, Johnston sold to Parker a vending-machine business that Johnston had been operating in Cleburne county. The purchaser made a down payment of $20,000 and executed a monthly-installment note and a security agreement for the unpaid balance of $22,000. Within about six months Parker refused to make any further payments on the debt. Johnston brought this foreclosure suit to enforce the contract. By counterclaim Parker asked for

rescission and consequential damages. This appeal is from a decree granting relief to Johnston and rejecting Parker's counterclaim.

We can materially compress our discussion of the issues by explaining at the outset the posture of the case as it reaches us. At the trial Johnston rested after having made a prima facie case by introducing the note and security agreement and proving the amount due. Parker then introduced a great deal of testimony to establish his right to a rescission, for fraud. At that point counsel for the plaintiff asked that the counterclaim be dismissed, "because they have not established, by any clear, convincing proof, any misrepresentation of a material fact, any right to rely. . ." The chancellor, over the defendant's objections, sustained the motion to dismiss the counterclaim, which ended the trial.

As the case now stands our discussion of the issues must be prefaced by two observations. First, fraud such as that asserted by Parker need not be established by clear and convincing evidence; a preponderance of the proof suffices. That point was fully discussed and settled beyond any possibility of doubt in *Clay* v. *Brand*, 236 Ark. 236, 365 S. W. 2d 256 (1963). Secondly, under our decision in *Carrick* v. *Gorman*, 232 Ark. 729, 340 S. W. 2d 377 (1960), the plaintiff, at the stage of the case that was reached below, is not entitled to test the counterclaimant's proof by a demurrer to evidence. Such an attempt, when sustained by the chancellor, waives the plaintiff's right to adduce additional proof and brings the case to us for final trial *de novo* on the record made below. Hence in the case at bar Parker's proof, except for its own inherent weaknesses or contradictions, is substantially undisputed.

In September of 1965 Parker, a resident of California, came to Arkansas to visit a wartime friend and look for a ranch near Heber Springs, where excellent hunting and fishing are to be had. The real estate agents

that Parker consulted did not have a suitable ranch for sale, but they interested Parker in Johnston's vending-machine business, which Johnston had listed with them a few days earlier.

Negotiations were conducted from time to time over a period of more than a month. The vending-machine business consisted essentially of 33 juke boxes, 22 pinball machines, and 38 cigarette machines. Most of the machines were on location in cafes and other places; the rest were in a warehouse. Johnston represented the value of the machines to be equal to the $42,000 purchase price. According to the record, the machines were actually worth not more than $18,000 (less than the down payment) and perhaps as little as $5,000. Some of the machines were demonstrably worthless, such as 10-year-old juke boxes that would play only 78-rpm records, which are no longer made.

The prospective income from the business was of paramount concern to Parker. The 36 monthly principal payments were to be $668.68 each. Parker explained to Johnston that he knew nothing about the business and that he was relying on Johnston for correct information. According to the undisputed testimony of four witnesses—Parker and three of the real estate agents—Johnston assured Parker that the business would produce a net income of $1,200 to $1,600 during the summer months and of not less than $1,000 a month during the rest of the year, so that the $22,000 debt would be paid off within about fifteen months.

Upon the proof before us no conclusion is possible except that the representations were false, were material, and were relied upon by Parker. During the six months that elapsed before Parker made the second of the only two full-scale principal payments that he made, he was able to make a profit, above his expenses and depreciation, in only one month. The record indicates that the depreciation upon 93 secondhand machines, for

which Parker was to pay $42,000, must have been not far from the monthly allowance of $700 claimed by Parker as proper depreciation. We have no hesitancy in saying that Parker clearly established his right to rescission under the principles announced in several recent cases. *Clay* v. *Brand, supra; Miller* v. *Porter,* 218 Ark. 841, 238 S. W. 2d 940 (1951); *Kotz* v. *Rush,* 218 Ark. 692, 238 S. W. 2d 634 (1951).

We have studied the appellee's arguments for affirmance, but they are not convincing. The contention that a purchaser is not entitled to rely upon the seller's assurances about the past profits of a business, especially when the matter is peculiarly within the seller's knowledge, was rejected in the *Kotz* case, *supra*. Here, just as in that case, Parker asked to see the seller's records during the negotiations, but Johnston evaded the inquiry by saying that no records were available. We are not impressed by Johnston's suggestion that Parker should have obtained Johnston's past income tax returns by discovery procedure and introduced them in evidence. As we have seen, Parker made a strong case for relief upon his counterclaim. If the missing tax returns would have supported Johnston's assertions about past profits it was his duty to go forward with the evidence by producing them.

Finally, Parker did not waive his right to rescission by making all or part of two principal payments, one on March 30 and the other on May 2, 1966. His continual complaints to Johnston were met by assurances that the business would pick up, if given time. Johnston had repeatedly said that the summer months—the resort season in the county—would be especially profitable. We realize, of course, that in many instances a buyer who deliberately continues to make installment payments with full knowledge of the seller's misrepresentations may thereby waive his right to rescission. But here the issue is one of fact. Parker's position is fully as strong as that of the purchasers in the *Clay* case, *supra,*

who made three monthly payments before ''they became convinced the water supply and sewage facilities were inadequate.'' The Uniform Commercial Code recognizes the buyer's right to revoke his acceptance of the goods under circumstances such as those present here. Ark. Stat. Ann. § 85-2-608 (Add. 1961). We cannot say that Parker slept on his rights.

The decree is reversed and the cause remanded for the entry of a decree rescinding the contract and restoring the parties to their original positions. We find no proof of consequential damages, which are denied.