## Carl HERRICK *v.* Donald G. ROBINSON

79-272                                           595 S.W. 2d 637

## Opinion delivered January 28, 1980
[Supplemental opinion on denial of rehearing March 31, 1980.]

*J. Harrod Berry,* for appellant.

*Spitzberg, Mitchell & Gill,* by: *Christopher Barrier,* for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellee Donald G. Robinson brought this action against appellant Carl Herrick and Herrick's son and daughter-in-law, David and Beverly,

seeking to recover $9,200, as the balance he alleged to be due him on the purchase price for the inventory and business name of Park Hill Custom Framing and Molding Company, which he had operated in North Little Rock. Appellant and the other defendants defended on the ground that their agreement to purchase was tentative and conditional, and that they had been induced to enter into the agreement by material misrepresentations and concealment of facts by Robinson. They alleged that they had rescinded the contract. Carl Herrick also counterclaimed seeking to recover the amounts he had paid to Robinson on the purchase price, and money he had put into the business operation, the dismissal of Robinson's complaint and "all other equitable relief." The allegations pertaining to the fraudulent representations were that Robinson had falsely represented that the business was in good financial condition, that not much was owed on it and the business obligations could and would easily be taken care of from the net proceeds of a pending sale of his home, that the average gross monthly income of the business was $3,500 to $4,000, that the stock and equipment were in good condition and saleable, that large orders could be expected, and that all accounts receivable were good. Appellant alleged that his defenses were equitable and that the case should be transferred to equity. The counterclaim contained allegations that, as an inducement to the Herricks to purchase the business, its assets, good will and trade name, Robinson misrepresented and exaggerated the amount and condition of the assets, sales volume, earning ability and financial condition of the business and concealed the actual condition of the business as to accounts payable, lienable obligations and certain accounts receivable. Appellant alleged that these misrepresentations and concealments were made with the intent that they be relied upon by the Herricks, and that they did so, to their detriment and damage. Appellant again alleged that he had no full, plain, adequate and complete remedy at law and that, his remedies being equitable, the case should be transferred to equity. Appellee denied appellant's right to rescission and pleaded estoppel and laches as defenses to the counterclaim.

After having denied appellant's motion to transfer the case to equity on September 25, 1978, the case was tried to

the court without a jury and the circuit judge, after hearing the evidence, rendered a written opinion on December 7, 1978. In it he made many findings of fact, among which the following are significant on this appeal:

The Herricks and Robinson met on a Sunday afternoon at the place of business involved, discussed a purchase price of $35,000, and agreed upon a negotiated price of $25,000 and the purchaser, through David and Beverly Herrick, took possession on the following day, Monday, November 2, 1976.

Carl Herrick notified Robinson that the transaction was being terminated by a letter dated March 14, 1977.

The amount of the balance for which Robinson sued was arrived at by giving the Herricks credit for $3,500 Carl Herrick paid him and $12,452.69, as the net proceeds from the sale of the assets of the business at an auction.

In spite of alleged misrepresentations, the Herricks took an inventory and any shortcomings were readily available to the defendants.

Any and all liens, even if not disclosed to the defendants before the purchase, were known to appellant before the defendants quit the business and were in fact satisfied in either December, 1976 or January, 1977, and, as additional security to purchaser, Robinson caused a receiver to be appointed, whose duty it was to receive the balance of $21,500 on the purchase price from the defendants and immediately satisfy claims of creditors which would affect the business.

Appellant became discouraged and even frustrated, because of the inability of David and Beverly to settle differences with Robinson on such matters as the amount of the purchase price, and because of the belated feeling that the family business venture was not so good and a costly mistake had been made.

The case could have very easily been transferred to chancery court, but appellant's motion to transfer was denied without objection, once it was agreed trial would be without a jury, the attorneys for both parties realizing that some equitable principles would necessarily be applied.

There was justification for allowing appellant an additional credit of $2,000 for bills paid, accounts receivable and personal property not in working order. After allowing this credit, Robinson was entitled to judgment for $7,113, but no interest, because the parties failed to fix a day certain for payment of the balance of the purchase price.

Before judgment was entered, appellant filed a motion for a new trial, on the ground that the judgment was not sustained by sufficient evidence and was contrary to the law and the evidence. Appellant pointed out the following examples:

1. The finding that any and all liens were satisfied by January, 1977, was erroneous because a valid lien of Twin City Bank, based upon a security agreement covering all the assets sold, was not satisfied until a balance of $10,500 was paid from the proceeds of an auction sale in a chancery court receivership held on August 10, 1977, after the Herricks had surrendered possession of the business.

2. Tax liens, especially one in favor of the federal internal revenue service, were still unpaid at the time of the trial and appellant did not know of the internal revenue service lien until long after the down payment on the purchase price was made and possession of the business taken.

3. The $21,500 balance on the purchase price would not have been sufficient to satisfy all business debts and liens.

Appellant also stated that both the above liens constituted a

breach of the seller's warranty under Ark. Stat. Ann. § 85-2-312 (Add. 1961) and constituted a ground for cancellation of the contract.

The judgment entered contained additional findings of fact. Among them were these:

1. The contract was between Robinson and appellant Carl Herrick and, in certain respects, David and Beverly acted in behalf of Carl.

2. The balance of the purchase price, remaining after down payments totalling $3,500 were made, was to be paid within a reasonable time.

3. By the terms of the contract, Robinson was not only to deliver the inventory and business premises, but also to assure the purchaser of clear title, in connection with which he was to compile a list of creditors of the business, and the purchaser was to make a complete inventory of the business.

4. Since the parties, by their actions, made the Bulk Sales Act inapplicable, the state court receivership was necessary to accomplish a conveyance free of claims of creditors.

5. An inventory was promptly taken in November, 1976, and defendants were aware they were purchasing the business at a "distress price" and that the inventory was not in first class condition.

6. By failing to act promptly, defendants waived the deficiency in the inventory and the attempt of appellant to rescind the contract was ineffective because it was not timely.

7. Appellant was entitled to credit for $508.74 for the proceeds of accounts payable [receivable] incorrectly credited to Robinson and to $1,491.26 credit for deficiencies in the equipment sold.

After the judgment was entered, appellant filed an

amendment to his motion for a new trial. In it he alleged that the federal internal revenue service had on January 3, 1979, served a "Notice of Levy" on him for delinquent taxes amounting to $6,705.31. By this notice, he was notified that demand for payment had been made on Robinson, but that Robinson had neglected or refused to pay this amount. The levy was upon "all property and rights to property, monies, and credits" in appellant's possession belonging to Robinson and all sums of money or other obligations owing by appellant to Robinson, or on which there was a lien under Chapter 64, Internal Revenue Code. It included a demand upon appellant for the amount necessary to satisfy this tax liability or for such lesser sum as appellant might be indebted to Robinson. The levy indicated that it was for the unpaid balance and statutory additions owed by Robinson for income taxes and social security taxes withheld for tax periods ending March 31, June 30, and September 30, 1976.

Appellant's first point for reversal is stated thusly:

I

TRIAL COURT ERRED (A) IN DISMISSING COUNTERCLAIM OF CARL HERRICK AND GRANTING JUDGMENT TO PLAINTIFF, AND (B) IN FAILING TO ACT UPON AND GRANT MOTION FOR NEW TRIAL, BECAUSE OF EFFECT OF:

A & B.

1. THE UNDISPUTED EVIDENCE, WHICH SHOWS THE EVIDENCE INSUFFICIENT TO SUPPORT THE JUDGMENT.

2. APPELLEE-SELLER'S MISREPRESENTATIONS AND CONCEALMENTS RELIED AND ACTED ON, AND FAILURE TO COMPLY WITH UNDERSTANDING AND MAKE BUSINESS CONFORM, IN GENERAL.

3. THE UNDISCLOSED INTERNAL REV-

ENUE AND SALES TAX LIENS.

4. THE UNDISCLOSED TWIN CITY BANK LIEN.

5. THE FAILURE OF SELLER TO COMPLY WITH BULK SALES PROVISIONS.

6. THE RECEIVERSHIP PROCEEDINGS TO SELL TO APPELLANT'S SON AND DAUGHTER-IN-LAW, AND INSOLVENCY OF THE BUSINESS.

7. LACK OF MEETING OF MINDS SUFFICIENT FOR CONTRACT.

ALSO

8. IF THERE WAS CONTRACT AS TO APPELLANT: (A) THERE WAS TOTAL FAILURE OF CONSIDERATION; (B) APPELLEE ABANDONED IT.

9. TRIAL COURT'S FAILURE TO TRANSFER TO EQUITY WAS ERROR.

Appellant argues I (A) and (B) jointly. We will treat the stated subheadings as noted.

### 1, 2, 3 and 4

Appellant argues that the undisputed documentary evidence and the undisputed unbiased testimony of the Twin City Bank loan officer negate the possibility of the evidence on behalf of appellee rising to the dignity of substantial evidence and show "overwhelmingly" that appellant was entitled to recover. Appellant points out that the inventory was to be according to that written on some yellow sheets of paper by Robinson, and that Robinson admitted that he had represented the value of inventory at $62,000 and that the Herricks were buying the business on the basis of this representation. The inventory sheets disappeared shortly after the Herricks took possession, probably while Robinson was

still living in the building in which the business was conducted. The same inventory sheets, or most of them, were in Robinson's possession and produced by him at the time of the trial. Robinson testified that this inventory was made about a month and a half prior to the sale. No list of creditors was delivered to the Herricks until February 8, 1977, when it was delivered to appellant's attorney after that attorney had written Robinson about the matter on February 3. A creditors' list was not even prepared until the last part of December and it was used by Robinson in a receivership proceeding instituted by him on January 20, 1977.

After the auction sale in the receivership proceeding, $10,500 of the net proceeds of $12,387 was applied to Robinson's indebtedness to Twin City Bank. Robinson admitted that in a balance sheet he had prepared, he had included his dwelling house, with an accompanying statement that it had been sold for $68,500 and that the proceeds would be sufficient to pay all notes payable. The house was actually sold for the indicated purchase price, but the proceeds were not sufficient to pay Twin City Bank. This balance sheet showed fixed assets of $147,650.94 and liabilities of $78,078.50. Robinson admitted that he could have represented that his lease on the building in which the business was located was transferrable, but he would not have known that to be a fact. He also admitted that he could have told the Herricks that he would personally attend to having the lease transferred.

Robinson could not recall telling the Herricks the names of his creditors, but said that he told them that the proceeds of the sale of the business would go toward retirement of his debts, and he would receive nothing. He admitted having represented that the business was "an ongoing business concern" and that it was a good viable business that could be profitable if operated properly, but that he had later admitted that the business was, in truth and fact, a sick one. He did not tell the Herricks of his indebtedness to Twin City Bank secured by a lien on his dwelling house and the business inventory and fixtures. He did not advise the Herricks of the actual and potential tax liens.

Without detailing the testimony further, there is indeed

overwhelming evidence that appellant was induced to enter into the agreement with Robinson by misrepresentation and concealment that constituted fraud, either actual or constructive. *Parker* v. *Johnston,* 244 Ark. 355, 426 S.W. 2d 155; *Lane* v. *Rachel,* 239 Ark. 400, 389 S.W. 2d 621. Cf. *Fausett & Co.* v. *Bullard,* 217 Ark. 176, 229 S.W. 2d 490; *Farmers Cooperative Ass'n.* v. *Garrison,* 248 Ark. 948, 454 S.W. 644. Appellant had the right to, and did, elect the remedy of rescission on the ground of fraud. Appellant's defense and counterclaim were based upon the premise that he had rescinded the contract. For a rescission to be effective, however, it must be timely.

One who desires to rescind upon the ground of fraud or deceit must, as soon as he discovers the truth, announce his purpose at once, adhere to it, and act with reasonable diligence, so that all parties may be restored to their original position as nearly as possible; if he continues to treat the property involved in the transaction as his own or conducts himself with reference to the transaction as though it were still subsisting and binding, he will be held to have waived the objection and will be as conclusively bound by the contract as if the fraud had not occurred. *First National Bank* v. *Coffin,* 184 Ark. 396, 42 S.W. 2d 402; *Ratliff* v. *Bank of New Orleans & Trust Co.,* 266 Ark. 492, 586 S.W. 2d 237 (1979); *McCormick* v. *Daggett,* 162 Ark. 16, 257 S.W. 358; 13 Am. Jur. 2d 530 (Cancellation of Instruments), § 44. Furthermore, as a condition precedent to an effective rescission, the party rescinding must restore, or offer to restore, the opposite party to his former position. *Davis* v. *Tarwater,* 15 Ark. 286; *Bellows* v. *Cheek,* 20 Ark. 424; *Stanford* v. *Smith,* 163 Ark. 583, 260 S.W. 435. See also, *United States* v. *Arkansas Mills,* 216 F. 2d 241 (8 Cir., 1954).

There is substantial evidence to support the trial court's finding that appellant had failed to act promptly and that the attempt of appellant to rescind the contract in March, 1977, was ineffective because it was not timely. Robinson testified that the Herricks took a physical inventory of the business during the two week period following their taking possession. Although the Herricks testified that this inventory was not complete until the first week in December, it is clear that

they were aware of substantial shortages even earlier, and certainly knew that the value was much less than $62,000. They had confronted Robinson with the fact that there was a great deficiency in late December or early January. The younger Herricks had some previous knowledge concerning the business. David Herrick had worked there for three years ending a year or year and a half prior to the sale, and had been familiar with all aspects of the business except for bookkeeping. Beverly Herrick also had worked for Robinson at one time and she knew, at the time of the transaction, that there had been some deterioration of the business and some of its inventory. Possession of the place of business and its physical inventory were not surrendered to Robinson until June or July, more than seven months after the Herricks took possession. Possession was surrendered to Robinson when the owner of the property asked Herrick to vacate the building. Robinson received notice of this from the landlord. At the time of the negotiations, which took place at the place of business, the electricity had been turned off. Robinson testified that he had then told the Herricks that he had been unable to pay the bill for electricity. Robinson never gave the Herricks a copy of his lease on the building. The Herricks did not actually demand the list of creditors until February, even though it appears that Robinson had promised to deliver a list of creditors and accounts receivable not later than the first week in January, 1977, three months after the Herricks had taken possession. It was more than one month thereafter that appellant attempted to rescind the contract.

Robinson testified that he told the Herricks when the down payment was made that he was using that money to pay electrical and telephone bills and other such bills in order that they could continue to operate the business. There was evidence that the Herricks were fully informed of the extent of the Twin City Bank debt during the month of November. It is clear that they knew of the balance due the bank in early December, after a part of the proceeds of the sale of Robinson's house had been applied to that debt. It certainly was clear at that time that the proceeds of the sale of the house did not pay all of Robinson's notes payable. By November 24, appellant knew that Robinson was delinquent in remitting

sales taxes and furnished money for the payment of delinquencies in order to obtain the necessary sales tax permit, but the retailer's permit was "put on hold" because of additional delinquencies. Beverly Herrick learned of the internal revenue service lien in November or December. When the Herricks sent payments to suppliers for items they had ordered, they were credited to Robinson's past due accounts and some of these suppliers put limitations on purchases and others demanded cash payments. As a consequence, the Herricks had trouble obtaining supplies.

Appellant's only excuse for waiting until March 14 to rescind was that for weeks and months the Herricks had repeatedly asked for and expected a list of creditors and that they felt that, if it was forthcoming, they could go ahead and had hoped the matter could be worked out. Since rescission requires prompt action after the discovery of fraud, the question of timeliness of the attempted rescission was one of fact. *Kilgo* v. *Continental Casualty Co.*, 140 Ark. 336, 215 S.W. 689; *Siegel, King & Co.* v. *Penny & Baldwin*, 176 Ark. 336, 215 S.W. 2d 1082; *Cross* v. *Rial*, 227 Ark. 1124, 305 S.W. 2d 129; *Newton National Bank* v. *Newbegin*, 74 F. 135 (8 Cir., 1896); Annot. 72 ALR 726, 752. It was resolved against appellant on the basis of substantial evidence.

Appellant invokes authorities relating to actions for breach of warranty, but they are inapplicable because appellant elected to rescind rather than to seek to recover for breach of warranty. The remedies are not consistent, because rescission is based upon disaffirmance of the contract and recovery for breach requires its affirmance. *Cleveland* v. *Biggers*, 163 Ark. 377, 260 S.W. 432; *Lane* v. *Rachel*, 239 Ark. 400, 389 S.W. 2d 621; *Kotz* v. *Rush*, 218 Ark. 692, 238 S.W. 2d 634; *Yeates* v. *Pryor*, 11 Ark. 58.

Appellant also relies upon Ark. Stat. Ann. § 85-2-608 (Add. 1961) governing revocation of acceptance of goods. Even if applicable, the language of the statute itself requires that revocation occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in the condition of the goods which is not caused by their own defects. The reasonableness of the time is ordinarily a question of fact for the

factfinder. *Dopieralla* v. *Arkansas Louisiana Gas Co.,* 255 Ark. 150, 499 S.W. 2d 610; *Gramling* v. *Baltz,* 253 Ark. 361, 485 S.W. 2d 183. We do not reverse the factfinder's answer to the question if, as here, substantial supporting evidence exists. *Frontier Mobile Homes* v. *Trigleth,* 256 Ark. 101, 505 S.W. 2d 516.

As appellee points out, there has never been an effective tender to Robinson of the assets purchased by appellant or an offer to restore Robinson to his position as it existed at the time of the agreement. But a restoration must be possible. *Desha* v. *Robinson,* 17 Ark. 228. A contract cannot be rescinded, except by mutual consent, where the circumstances have been so altered by part execution, that the parties cannot be put in statu quo. *Bellows* v. *Cheek,* 20 Ark. 424. Appellant relies on the statement in his letter of March 14, that he offered back, as far as he was concerned, the said business operation. Appellant put David and Beverly in possession of the business. Leaving them in possession was hardly a restoration to Robinson, particularly after they had operated the business from November 1 until May 31, selling from the inventory and purchasing supplies. The record, as abstracted, gave absolutely no basis for the court to restore Robinson to his former position. Appellant made no mention of restoration or offer of restoration in his answer or counterclaim, but sought to recover not only his down payment of $3,500 but also $2,500, which he advanced for the operation of the business. This relief was totally inconsistent with an action based on rescission, but was consistent with an action at law for damages.

5

Appellant is in no position to complain of appellee's failure to comply with Ark. Stat. Ann. § 85-6-101 et seq (Add. 1961) commonly known as the Bulk Sales Act. These provisions are primarily for the protection of the creditors of the seller and compliance with the Act is not compulsory, insofar as the seller is concerned, unless compliance is required by the buyer. There is no evidence that appellant required compliance with this statute or that compliance by the seller was a term of the agreement. Non-compliance was not, in this case, a ground for rescission.

6

We have been unable to determine the materiality of the chancery court receivership to the present litigation. If it is relied upon as a ground for rescission, it is immaterial for we have concluded that the right to rescind was beyond question.

7

Appellant's argument on this point is that the contract was conditional, that the conditions were a satisfactory inventory check, furnishing of credit information, and deciding how the purchase price was to be paid, and that, as a result, there was no meeting of the minds. It seems odd that one would seek to rescind a contract that did not exist. Although appellant alleged in his pleadings that the agreement was "a tentative and conditional oral understanding," there was no allegation that there was no meeting of the minds. We do not agree with appellant that the purchase price remained unsettled or that subsequent agreements on the part of Robinson to make adjustments because of discrepancies discovered show that there was no meeting of the minds at the time the contract agreement was made.

Actually appellant alleged that the balance of the purchase price was to be paid "later," after Robinson had furnished information as to the indebtedness and financial condition of the business and a mutually acceptable written inventory and itemization of stock, supplies, furniture, fixtures, and equipment and other assets and personal property. Robinson testified that there was an agreement entered into between the parties, and that, while no specific time was fixed for payment of the balance of the purchase price, it was to be paid within a reasonable time after financing had been arranged by the buyers. Appellant testified that at the time of the meeting concerning the sale and purchase, there was an agreement that a week to ten days was reasonable to work out the balance of the financing.

To say the least, there was substantial evidence to justify the circuit court's finding that there was a contract and that the balance of the purchase price was to be paid within a reasonable time.

## 8

Appellant contends that there was a total failure of consideration in this case, because the property was sold to him with a warranty against incumbrances but was later sold for debts which were liens against it at the time of the sale. Not all property involved here was sold to satisfy liens. Part of it was sold by the Herricks while they were operating the business. The receivership sale was made some five months after appellant gave notice of rescission, so that fact gave no grounds for rescission. Failure of consideration was not mentioned in appellant's pleadings and is raised for the first time on appeal.

Appellant also says that Robinson abandoned the contract by dealing with David and Beverly Herrick in attempting to negotiate a sale to them. A part of the acts relied upon occurred after appellant's notice of rescission, so they could hardly constitute an abandonment of the contract by Robinson. There was substantial evidence to justify the trial court's finding that the contract was with appellant, but that David and Beverly acted in his behalf in some respects. Appellant alleged that the purchase of the business was to be primarily for the benefit of David and Beverly. Appellant testified that David and Beverly signed the checks on the money he put into the business, including the one for the $2,500 down payment. They operated the business after they took possession. They were responsible for checking the inventory. Appellant said he was not even present when the final price of $25,000 was agreed upon by David, Beverly and Robinson. Beverly talked to Robinson about inventory discrepancies. The dealings between Robinson and David and Beverly prior to appellant's attempted rescission do not clearly show an abandonment of the contract by Robinson. Abandonment of the contract was not asserted as a defense in appellant's answer. This issue also seems to have been raised for the first time on appeal.

## 9

The motion of appellant to transfer the cause to equity was denied on the basis of the pleadings. After having heard

the evidence in the case, the circuit judge rendered a memorandum opinion stating that the case could very easily have been transferred to chancery, but that the motion to transfer was denied without objection, once it was agreed that the trial would be without a jury. The record does not reveal that the transfer to equity was waived, even though there must have been an agreement that the case be tried without a jury.

Rescission is a remedy cognizable both at law and in equity. *Philpott* v. *Superior Court of Los Angeles County,* 1 Cal. 2d 512, 36 P. 2d 635, 95 ALR 990; Annot. 95 ALR 1000. See also, 17 A CJS 504, Contracts, § 413. A suit for rescission can be brought in equity only if relief cannot be obtained in a court of law. *Philpott* v. *Superior Court of Los Angeles County,* supra; 17 Am. Jur. 2d 955, Contracts, § 485. If money alone has been paid by a rescinding party, the law implies a promise by the other party to repay it and this implied promise is the basis for the common law action for money had and received. *Bellows* v. *Cheek,* supra; *Lafferty* v. *Day,* 7 Ark. 258; *Desha* v. *Robinson,* supra; *Philpott* v. *Superior Court of Los Angeles County,* supra; 17 Am. Jur. 2d 955, Contracts, § 485.

It is error to deny a transfer to equity or the motion of a defendant raising an equitable defense only when that defense is exclusively cognizable in equity. *Daniel* v. *Garner,* 71 Ark. 484, 76 S.W. 1063; *Childs* v. *Magnolia Petroleum Co.,* 191 Ark. 83, 83 S.W. 2d 547. On the face of the pleadings there was nothing to indicate that appellant's defense was cognizable only in equity or that his remedy at law was not adequate. There was no instrument to be cancelled or any other basis for relief except for the question of appellant's right to recover the part of the purchase price he paid. Consequently, there was no error in the denial of the motion to transfer.

I   C

C.  HONORABLE TRIAL COURT'S DECISION IS IN ERROR BASED ON CASE AS A WHOLE.

Appellant points out that there is clear factual error in the trial judge's statement in his memorandum opinion that any and all liens were satisfied in December, 1976 or January, 1977. We agree that this is a statement which is not supported by the record. We also think that it is immaterial in the view we have taken of the case as to the right of rescission.

## II

SUPREME COURT SHOULD REVERSE AND, THIS NOT HAVING BEEN JURY TRIAL, RENDER FINAL DECISIONS OR SEPARATE CAUSES FOR FINAL DECISION AND/OR REMAND.

We do not fully understand appellant's argument. He contends that appellant was clearly entitled to recover and to have the claim against him dismissed, so he asks that we reverse the judgment against him and either render judgment for him or remand the case for the entry of such judgment in his favor as the evidence warrants; or, in the alternative, reverse, dismiss the judgment in favor of appellee and remand appellant's counterclaim. Since there was substantial evidence that appellant's attempted rescission was not timely, we need not consider this point.

The judgment is affirmed.

HICKMAN and PURTLE, JJ., dissent.

Supplemental Opinion on Denial of Rehearing
delivered March 31, 1980

JOHN A. FOGLEMAN, Chief Justice. Some of the arguments advanced by appellant on his petition for rehearing are such that we deem it appropriate to issue this supplemental opinion in denying the petition. For the most part, we will not consider arguments which are mere repetition of those already considered by the court. Rule 20, Rules of Supreme Court and Court of Appeals, Ark. Stat. Ann., Vol. 3A (Repl. 1979).

In his petition for rehearing appellant asserts that there was error in the finding in the original opinion that his attempted rescission was not timely. We did not so find. We found that there was substantial evidence to support the trial court's finding that it was not timely. Appellant argues, however, that, in making that finding, we should disregard the testimony of Robinson, because his conduct was fraudulent and because little weight should be given statements of a witness which are vague on details he should know and which are manifestly wrong on others. The credibility of Robinson, and the weight to be given his testimony, were matters for determination by the trial court. We are not at liberty to disregard any testimony to which the trial court has accorded some weight. Furthermore, our finding that there

was substantial evidence to support the trial court's finding in this respect was not based entirely on the testimony of Robinson.

As a part of his argument on rehearing, appellant again asserts that his son and daughter-in-law were in possession of the business by arrangement with appellee and not through appellant. The trial court specifically found that the purchaser, Carl Herrick, took possession through his children and that possession was retained until June 4, 1977. The trial court also found that, in some respects, David and Beverly Herrick acted in behalf of Carl Herrick in taking possession. We fully understand that appellant took the position in the trial court that David and Beverly were put in possession by appellee and that appellant had nothing to do with their remaining in possession. But when the evidence is viewed, and all reasonable inferences drawn, most favorably to appellee, we certainly cannot say that there was no substantial evidence to support the trial court's findings.

Appellant argues that he was relieved of tender of restoration because there was no evidence that appellee would accept the business back and the evidence indicates clearly that he would not have. He relies upon *Adams* v. *Berg,* 199 Ark. 1096, 137 S.W. 2d 912 and *Galloway* v. *Russ,* 175 Ark. 659, 300 S.W. 390. Neither case is applicable here. In *Adams,* the plaintiff sought cancellation of an oil and gas lease and the recovery of the purchase money paid by him. It was contended that the plaintiff had failed to offer to return the interest in the lease conveyed to him. We held that this was unnecessary since the cancellation would accomplish that very purpose and thus amounted to an offer to reconvey. In *Galloway* the property involved was a refrigerating machine. The buyers promptly informed the seller that they would not accept it, and were informed by the sellers that they thought they could hold the buyers under the contract. The machine was never installed, as the dispute arose before installation. There was no impediment to restoration in either case. The real problem here is not the question of tender, even though we did note that there had never been an effective tender of the assets purchased or an offer to restore Robinson to his position as it existed at the time of the

agreement, and that appellant made no mention of restoration or offer of restoration in his answer or counterclaim. The important fact is that even though appellant offered to relinquish any interest he had in the *business,* he, through his son and daughter-in-law, had operated the business for more than four months prior to appellant's attempted rescission, selling the assets in the regular course of business, and buying inventory for use therein, and continued in possession and operation of the business for an additional two or three months thereafter. Under any circumstances, appellee would have been entitled to some accounting for these assets and a restoration to that extent. See *Parker* v. *Johnston,* 244 Ark. 355, 426 S.W. 2d 155. But the record, as abstracted, does not indicate any basis on which that could be done.

Appellant asserts that what he received was worthless. He also contends that there was a failure of consideration and that this issue was raised in the trial court and not for the first time on appeal, as stated in the original opinion.

The only allegations in appellant's pleadings that could be taken to raise the issue of failure of consideration in the trial court are statements from which appellant asserted that the "business indebtedness" was "large" and in excess of the value of the assets. In his brief here, appellant argued that there was a *total* failure of consideration. He placed specific reliance upon 77 CJS Sales, § 22b, par. 3, in which it is stated that there is an entire failure of consideration for property sold with a warranty against encumbrances if it is sold for debts which were liens against it at the time of the sale or if it did not have a value in excess of prior encumbrances existing at the time of sale, provided such encumbrances have prevented any substantial use or enjoyment of the property by the buyer. Although it is clearly established that the value of the business was misrepresented to Carl Herrick, the trial court did not find that there was a failure of consideration, if the matter was actually in issue. Appellant filed a motion for new trial and an amended motion for new trial. In neither of them did appellant suggest that the trial court had overlooked this issue. More importantly, even though the burden was on appellant in the trial court to show that there was a total failure of consideration and to demon-

strate that there was error on the part of the trial court in failing to hold for appellant on that issue, appellant has failed to show that the business purchased was worth less than the liens against it on the record before us, which is the record abstracted. Appellant's house was covered by some of these liens and Twin City Bank was paid over $22,000 from the proceeds of the sale of the house. The balance of the Twin City Bank lien was extinguished when the physical assets of the business were sold in the receivership proceeding. At the time of the sale to appellant it appears that the federal tax lien was less than $5,000. Although it is clear that the inventory was of less value than represented, the inventory taken by Beverly Herrick is not abstracted. It was admitted that the values she placed on the items were a matter of her own opinion. There is simply no means by which we can determine the value of the items sold by the Herricks or the value of those items retained by Robinson which appellants contend were properly assets of the business they purchased, or for that matter of the inventory actually received by the Herricks. On this record, we cannot say that the trial court erred in not holding for appellant on the question of failure of consideration. Furthermore, we cannot say, on the record abstracted, that the assets purchased were worthless or that they were worth less than the liens against them at the time of the sale.

Appellant also contends that we erroneously stated that his action for rescission was inconsistent with recovery for breach of warranty, because we did not take into consideration the provisions of the Uniform Commercial Code. There is a problem in attempting to apply the Uniform Commercial Code Article on Sales, where, as here, there is a sale of a group of assets, some of which are goods, such as inventory and equipment, and others, e.g., the business name, goodwill, and accounts receivable, are not goods. See Ark. Stat. Ann. §§ 85-2-105, 85-2-107 (Add. 1961). It has been held that, in a sale such as this, the UCC provisions governing sales apply to the sale of goods, but not to the sale of that part of the assets which are non-goods. *Foster* v. *Colorado Radio Corp.*, 381 F. 2d 222 (10 Cir., 1967). In a case in which the sale of a business involved *goods only* it was held that the Article applied but the rule of *Foster* was recognized. *Miller*

v. *Belk,* 23 N.C. App. 1, 207 S.E. 2d 792 (1974). It has also been held that, when the physical assets are of little significance in a sale of both tangible and intangible assets (unlike the case before us), the contract should be viewed as one integrated contract, and Article 2 of the UCC is inapplicable. *Field* v. *Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 305 A. 2d 689 (1973), cert. den. 414 U.S. 1158, 94 S. Ct. 916, 39 L. Ed. 2d 110 (1973). The *Foster* rule was recognized and applied in a case involving the sale of a cordwood business, where, unlike the case before us, the entire purchase price was allocated by its terms among the various items of tangible property which were transferred by the sale. *Melms* v. *Mitchell,* 266 Or. 208, 512 P. 2d 1336, 65 ALR 3d 376 (1973). The Oregon court later pointed out that in *Melms,* the entire contract and the conditions thereof had to do only with goods as defined by the Uniform Commercial Code. It also stated flatly that there was no precedent for treating a contract as completely under the UCC provisions where (as here) it covers both goods and non-goods. *Meister* v. *Arden-Mayfair, Inc.,* 276 Or. 517, 555 P. 2d 923 (1976). The *Foster* rule, which seems to be generally accepted, would require that this contract be viewed in two parts, but this is not possible on the record before us.

If the UCC applies, it appears that appellant is correct in his contention that remedies for material misrepresentation or fraud include all remedies for non-fraudulent breach and that neither rescission, a claim for rescission of a contract for sale, nor rejection of the goods bars, or is inconsistent with, a claim for damages or other remedy. Ark. Stat. Ann. § 85-2-721 (Add. 1961). But appellant relies, in part, upon Ark. Stat. Ann. § 85-2-711 (Add. 1961) for recovery of damages in addition to the portion of the purchase price paid by him, pointing out that where the buyer rightfully rejects or justifiably revokes acceptance, he may cancel and may, in addition to recovery of the purchase price as has been paid, have "cover" and damages for non-delivery. There was no evidence of "cover" as defined in Ark. Stat. Ann. § 85-2-711 (Add. 1961). The measure of damages for non-delivery is the difference between the market price at the time the buyer learned of the breach and the contract price together with incidental and consequential damages but less expenses

saved in consequence of the seller's breach. Ark. Stat. Ann. § 85-2-713 (Add. 1961).

As heretofore pointed out, the record as abstracted, does not disclose evidence from which these damages could have been awarded, unless the $2,500 advanced for operation of the business is considered as an incidental or consequential damage. These expenses are not a consequential damage, as defined in Ark. Stat. Ann. § 85-2-715 (2) (Add. 1961). Nor can we say, as a matter of law, that it was an incidental damage as a reasonable expense incident to appellee's breach under Ark. Stat. Ann. § 85-2-715 (1). Appellant also relies upon Ark. Stat. Ann. § 85-2-711 (3), giving a buyer a security interest in goods in his possession and control for any payments made on the purchase price and any expenses reasonably incurred in their inspection, receipt, transportation, care and custody. There is nothing in the record, as abstracted, to show that the $2,500 advanced by appellant was for any of these purposes. What is just as important, is that § 85-2-711 (3) does not apply unless there has been a rightful rejection or justifiable revocation of acceptance of the goods involved. As appellant points out, under the UCC there is no magic in the words "cancellation" or "rescission." Ark. Stat. Ann. § 85-2-720 (Add. 1961). But rejection must be within a reasonable time after delivery of the goods and is ineffective unless the buyer seasonably notifies the seller. Ark. Stat. Ann. § 85-2-602 (Add. 1961). This is the same requirement as has always been made as to rescission and the trial court held that this was not timely done. Consequently, appellant must be taken to have accepted the goods unless, after reasonable opportunity to inspect them, he made an effective rejection. Ark. Stat. Ann. § 85-2-606 (1) (a) and (b) (Add. 1961). He also must be deemed to have accepted the goods if he did any act inconsistent with the seller's ownership if that act was ratified by the seller. Ark. Stat. Ann. § 85-2-606 (1) (c) (Add. 1961).

For the reasons heretofore stated, there was an acceptance by appellant, unless that acceptance was revoked. Revocation must occur within a reasonable time after the buyer discovers or should have discovered the ground for it

and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller. Ark. Stat. Ann. § 85-2-608 (Add. 1961). The court's finding as to timeliness of the "rescission" is a bar to an effective revocation, as is the retention of possession and selling of the goods after the ground for revocation should have been discovered. Appellant's remedies, then are those available for breach of contract in regard to accepted goods. Ark. Stat. Ann. § 85-2-721 (Add. 1961). These remedies include damages as set out in Ark. Stat. Ann. § 85-2-714 (Add. 1961). Recovery is barred under the first subsection of that section, which allows recovery of loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable, in the absence of notice of the breach to the seller within a reasonable time after the buyer discovers or should have discovered the breach. The trial court's finding on timeliness of "rescission" bars appellant's recovery under that section. As we have previously pointed out, the record as abstracted does not show any basis for finding the difference between the value of the goods accepted and the value they would have had if they had been as warranted. Nor can we say that special circumstances show proximate damages of a different amount. Thus, we cannot say there was a basis for allowing additional damages under Ark. Stat. Ann. § 85-2-715 (2); or that additional damages should have been allowed as incidental and consequential damages under Ark. Stat. Ann. § 85-2-715 (Add. 1961).

The burden was on appellant to demonstrate error in the judgment of the trial court. *Commercial Union Insurance Co.* v. *Henshall,* 262 Ark. 117, 553 S.W. 2d 274. He has not sustained that burden so the petition for rehearing must be denied.

HICKMAN, J., dissents and would grant the rehearing.